IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MANN BRACKEN, LLP              :

                                   :

    v.                        :   Civil Action No. DKC 15-1406

                                   :

EXECUTIVE RISK INDEMNITY, INC.

                                   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance case is a motion to remand filed by Cheryl E. Rose ("Ms. Rose"), acting in her official capacity as receiver of Mann Bracken, LLP ("Mann Bracken") (ECF No. 16) and a motion to dismiss filed by Defendant Executive Risk Indemnity, Inc. ("Executive Risk" or "Defendant") (ECF No. 8). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to remand will be denied and Defendant's motion to dismiss will be granted.

## I.  Background

### A.  Factual Background

The following facts are alleged in the complaint. (ECF No. 2). Mann Bracken was a law firm that specialized in debt collection. Axiant, LLC ("Axiant"), which is now bankrupt, offered consumer debt collection support services. (ECF No. 2-4, at 1). On April 4, 2008, Mann Bracken and Axiant entered

into an Administrative Services Agreement and a Legal Services Agreement. (ECF Nos. 2-4; 2-5). Under the Administrative Services Agreement, Axiant was to:

> [P]rovide such offices, personnel, facilities, equipment, and related services as are determined to be reasonably necessary for the proper and efficient operation of [Mann Bracken's collection activities and other legal services]. . . . [Axiant was also to] provide administrative and accounting services as are determined to be reasonably necessary for the proper and efficient operation of [Mann Bracken's collection activities and other legal services].

(ECF No. 2-4, at 1). The complaint summarizes Axiant's duties under the Administrative Services Agreement as requiring it to provide "consumer debt collection support activities, including client management services, arbitration support services, collection software, and other related support activities together with all required administrative services." (ECF No. 2 ¶ 34). Generally, "Axiant made available to Mann Bracken the Axiant offices, personnel, facilities, equipment, software, and Collection Agency Services for the benefit of Mann Bracken" and also maintained Mann Bracken's records. (*Id.* ¶¶ 36-37). The Legal Services Agreement allowed Axiant "in its sole and absolute discretion [to] place Accounts with [Mann Bracken] for collection from Debtors." (ECF No. 2-5, at 1).

The complaint alleges that, under the Administrative Services Agreement, Axiant debited funds from Mann Bracken's accounts to cover "certain reoccurring and certain periodic expenses, including payment of Axiant's own management fees." (ECF No. 2 ¶ 38). These funds would also cover court costs and other related fees. (*Id.* ¶ 48). On or about July 1, 2009, Mann Bracken learned that, through the debiting of these funds, Axiant owed Mann Bracken as much as $8,874,593.00. (*Id.* ¶ 47). Axiant filed for bankruptcy on November 20, 2009, and Mann Bracken filed a proof of claim for $8,874,593.00 as part of the bankruptcy proceedings on January 15, 2010. (*Id.* ¶¶ 56, 69). Due in part to the funds taken by Axiant, Mann Bracken ceased operations in December 2009. On February 27, 2010, the Circuit Court for Montgomery County appointed Ms. Rose as the receiver for Mann Bracken.

On December 27, 2011, Ms. Rose, acting in her capacity as receiver for Mann Bracken, initiated a lawsuit against Axiant seeking damages "for its negligence and breach in failing to perform its Collection Agency Services as required by law and the agreements: specifically, by failing to fully reimburse Mann Bracken amounts owed to it from the [unreimbursed advanced costs] and Mann Bracken's collection efforts." (ECF Nos. 2 ¶¶ 64-65; 8-1, at 11). On April 29, 2013, Ms. Rose and Axiant reached an agreement resolving that action. (ECF No. 2 ¶ 76).

Under the settlement agreement, Ms. Rose, on behalf of Mann Bracken, holds "a liquidated, general unsecured claim against Axiant in the amount of $13,400,000.00." (*Id.* at 13). The settlement agreement also "assigned all rights, title, and interest in [Axiant's insurance policy] to Mann Bracken." (*Id.* ¶ 81).

Defendant Executive Risk issued an insurance policy (the "Policy") to Axiant for the period of February 12, 2009 to August 10, 2010. (ECF No. 2-3, at 2). The insuring clause of the policy states that: "[Defendant] shall pay Loss on behalf of [Axiant] resulting from any Claim first made against [Axiant] and reported to [Defendant] in writing during the Policy Period, or any Extended Reporting Period, for Wrongful Acts committed by [Axiant] solely in the performance of or failure to perform Insured Services" during the policy period. (*Id.* at 9). "Insured Services" is separately defined as "Collection Agency" services. (*Id.* at 7). A "claim" is any "written demand for monetary damages or non-monetary relief; a civil proceeding commenced by the service of a complaint or a similar pleading; or an arbitration proceeding, against Axiant." (*Id.* at 9). "Wrongful Acts" is defined as "any actual or alleged negligent act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform Insured Services." (*Id.* at 12).

4

Section IX governs "Reporting." It provides in relevant part:

(A) Reporting of Claims and Wrongful Acts:

(1) If a Claim is made against any Insured, the Insureds or the Parent Organization shall immediately forward to the Company every demand, notice, summons, complaint or other process received by the Insureds or their representatives.

(2) If during the Policy Period an insured becomes aware of a Wrongful Act which may subsequently give rise to a Claim, and during the Policy Period the Insureds:

(a) give the Company written notice of such WrongfulAct, including a description of the Wrongful Act in question, the Identities of the potential claimants, the consequences which have resulted or may result from the Wrongful Act, the damages which may result from the Wrongful Act and the circumstances by which the Insureds first became aware of the Wrongful Act; and

(b) request coverage under this Policy for *any* subsequently resulting Claim for such Wrongful Act,

then the Company will treat any such subsequently resulting Claim as if it had been made against the Insureds during the Policy Period and, provided that written notice of such Claim is then given to the Company as soon as practicable after it is first made, as if such Claim had also been reported to the Company during the Policy Period.

(Id. at 15).

**B.   Procedural History**

Ms. Rose, "in her official capacity as receiver of Mann Bracken LLP, and as assignee of Axiant, LLC," commenced this action on March 10, 2015, by filing a complaint in the Circuit Court for Montgomery County.  (ECF No. 2).  The complaint's caption denominates the plaintiffs as "Mann Bracken, LLP, c/o Cheryl E. Rose, Esq. and a/s/o Axiant, LLC."  After receiving notice of the complaint on April 20, 2015, Defendant timely removed this case on May 15, 2015.  (ECF No. 1).  Defendant filed the pending motion to dismiss on May 22, 2015.  (ECF No. 8).  Ms. Rose filed an opposition (ECF No. 15), and Defendant replied (ECF No. 20).  On June 8, 2015, Ms. Rose filed the pending motion to remand.  (ECF No. 16).  Defendant filed an opposition on June 25, 2015 (ECF No. 21), and Ms. Rose did not reply.

**II.  Motion to Remand**

**A.   Standard of Review**

When a plaintiff challenges the propriety of removal, the defendant bears the burden of proving proper removal.  *See Greer v. Crown Title Corp.*, 216 F.Supp.2d 519, 521 (D.Md. 2002) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)).  In considering a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court."

*Richardson v. Philip Morris Inc.*, 950 F.Supp. 700, 702 (D.Md. 1997) (internal quotation marks omitted).   This standard reflects the reluctance of federal courts "to interfere with matters properly before a state court." *Id.* at 701.

   **B.   Analysis**

      (a)  **Diversity of Citizenship**

   "The federal removal statute allows a defendant to remove to federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Davis v. North Carolina Dep't of Corrections*, 48 F.3d 134, 138 (4th Cir. 1995) (quoting 28 U.S.C. § 1441(a)).   Defendant invokes federal jurisdiction based on diversity of citizenship.   Federal district courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).   It is undisputed that the amount in controversy exceeds $75,000, but the parties disagree as to whether the diversity requirement is satisfied.   Complete diversity of citizenship must exist to satisfy § 1332's diversity requirement.   The parties agree that Defendant is a citizen of Delaware and New Jersey.   However, Ms. Rose contends that Defendant has not met its burden of proof of showing complete diversity because it did not: (1) properly identify

7

Mann Bracken's citizenship and (2) Axiant either is or should be
a plaintiff, which would destroy diversity.

Defendant, in its notice of removal, identified Plaintiff's
citizenship as Maryland because Cheryl Rose, Mann Bracken's
court-appointed receiver, is an undisputed citizen of Maryland.
(ECF No. 1, at 2).   Defendant alleges that, despite how
Plaintiff captioned the case, Ms. Rose, as Mann Bracken's
receiver, is actually bringing the action and is the appropriate
plaintiff.   Defendant further argues that the court order
appointing Ms. Rose granted her authority to "[p]ursue claims
against Axiant through its bankruptcy proceeding and against any
insurance policies of Axiant."   (ECF 21-1, at 5).   Ms. Rose
purports, as illustrated by the caption, to be bringing this
action on behalf of Mann Bracken.   She asserts that Mann Bracken
itself is a true Plaintiff, and, because it is a limited
liability partnership, its citizenship is that of each of its
partners, which Defendant has not attempted to identify.   (ECF
No. 16, at 6); *see, e.g.*, *Central West Virginia Energy Co. v.
Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011);
*Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120
(4th Cir. 2004).

Courts look to the citizenship of a fiduciary (such as a
receiver) rather than the entity she represents, when "the law
of the appointing authority permits [her] to sue in [her] own

8

name, without joining any of the persons that [she] represents."

*Gross v. Hougland*, 712 F.2d 1034, 1037 (6th Cir. 1983) (citations

omitted).  Here, Maryland law states that:

> A person winding up a partnership's business may . . . prosecute and defend actions and proceedings, whether civil, criminal, or administrative, settle and close the partnership's business, dispose of and transfer the partnership's property, discharge the partnership's liabilities, distributed the assets of the partnership, . . . settle disputes by mediation or arbitration, and perform other necessary acts.

Md. Code Ann., Corps. & Ass'ns § 9A-803(c).[1]  The order

appointing Ms. Rose as receiver grants *her* power to "participate

in the Axiant Bankruptcy proceeding to collect [Mann Bracken's]

entitlement [and to] . . . [p]ursue claims against Axiant . . .

and against any insurance policies of Axiant."  (ECF No. 21-1,

at 5).  The order mandates that Ms. Rose "[t]ake and possess all

financial accounts of [Mann Bracken,] . . . [c]ollect checks

payable to [Mann Bracken] and accounts receivable and other

assets to which [Mann Bracken] is entitled."  (*Id.* at 3-4).  In

short, Maryland law and the court order appointing Ms. Rose

grant her, and not Mann Bracken itself, which has ceased

---

[1] Notably, the analogous provision regarding receivership of corporations grants a receiver "full title to all assets of the corporation" and states that the receiver "has full power to enforce obligations or liabilities" in the corporation's favor. Md. Code. Ann., Corps. & Ass'ns § 3-418(a).

operations and is insolvent, the authority to control Mann Bracken's assets and bring suit against Axiant and Executive Risk.  Moreover, Ms. Rose has repeatedly taken the position in other cases in this court that she should be substituted as the proper party for Mann Bracken.  *See, e.g., Thomas v. Mann Bracken, LLP, et al.*, RDB 09-3440, ECF No. 15; *Mann Bracken LLP v. LDG Financial Services LLC*, WGC 09-2103, ECF No. 21. Accordingly, Ms. Rose, as receiver for Mann Bracken, is the appropriate plaintiff in this case, despite the caption of the complaint.

Additionally, courts generally "treat [a receiver] as the plaintiff[]" for purposes of diversity jurisdiction.  *Mitchell v. Maurer*, 293 U.S. 237, 242 (1934); *see also Gray v. Bush*, 628 F.3d 779, 783 (6th Cir. 2010); *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & Von Gontard, P.C.*, 385 F.3d 737, 738 (7th Cir. 2004); *Coal & Iron Ry. Co. v. Reherd*, 204 F. 859, 883 (4th Cir. 1913); *Bank of America v. Musselman*, 222 F.Supp.2d 792, 794 n.3 (E.D.Va. 2002).[2]  The two cases Plaintiff relies on to

---

[2] The United States Court of Appeals for the Fourth Circuit has not squarely addressed this question since *Reherd*, over 100 years ago.  It did note, in passing, that diversity was met because, "[a]s an initial matter, . . . [t]he deputy receiver [was] acting on behalf of" a corporation that satisfied diversity.  *Gross v. Weingarten*, 217 F.3d 208, 220 (4th Cir. 2000).  Because the Fourth Circuit did not specifically decide the issue at hand, its brief discussion in *Gross* does not change the effect of the aforementioned precedent.

argue against using a receiver's citizenship are not persuasive. In *New Alaska Development Corp. v. Guetschow*, the Ninth Circuit used a corporation's citizenship in a suit brought by a corporation against its receiver for wrongful conduct of the corporation's affairs.  869 F.2d 1298, 1300-01 (9th Cir. 1989). *Guetschow* does not apply to the current case because it was not a suit brought *by* a receiver.  Rather, it was a suit brought by a corporation *against* a receiver.  Accordingly, the Ninth Circuit's reasoning does not apply here.  Plaintiff also cites an unpublished district court opinion from Massachusetts, but, in that instance, the court did not look at the receiver's citizenship because a receiver had not yet been appointed. *College-Town v. U.S. Tradewinds, Inc.*, No. 85-4758-MA, 1986 U.S. Dist. LEXIS 22709, at *5-6 (D.Mass. July 16, 1986).[3]

Plaintiff also argues that Axiant is a plaintiff in the current case or should be added as a necessary party.  (ECF No. 16, at 9).  Plaintiff alleges that this would destroy diversity because Defendant has not met its burden of identifying Axiant's citizenship.  Defendant counters that Axiant is not an existing

---

[3] The district court did note, again in passing, that "[i]f a dissolved corporation is considered sufficiently alive to sue or be sued, it continues to be a citizen, for diversity jurisdictional purposes, of the state which incorporated it." *Tradewinds, Inc.*, 1986 U.S. Dist. LEXIS, at *5.  The court did not elaborate or rely on this statement, instead basing its holding on the fact that because the receiver was not yet appointed and the corporation still existed, the citizenship of the potential receiver did not matter. *Id.* at *5-6.

plaintiff and is not a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure. (ECF No. 21, at 8-12). Plaintiff's attempts to style this action to include Axiant as a plaintiff are unavailing, as the record and submissions by the parties clearly show that Axiant is not an existing plaintiff in this action.

Plaintiff also argues that Axiant "certainly meets the requirements of Rule 19 as a necessary and indispensable party." (ECF No. 16, at 9). Defendant contends that Axiant is not a necessary and indispensable party because it assigned all its rights to Plaintiff as part of its settlement agreement and has no "legally cognizable interest in the claims being asserted in this action, which all belong exclusively to [Plaintiff]". (ECF No. 21, at 9). As the Fourth Circuit has articulated:

> Rule 19 of the Federal Rules of Civil Procedure sets forth a two-step inquiry for courts to determine whether a party is "necessary" and "indispensable." The first question under Rule 19(a) is "whether a party is necessary to a proceeding because of its relationship to the matter under consideration." *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir. 1999). Second, if the party is necessary but joining it to the action would destroy complete diversity, the court must decide under Rule 19(b) "whether the proceeding can continue in that party's absence." *Id.* at 917-18.

*Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014). "The inquiry contemplated by Rule 19(a) is a practical

12

one, and is addressed to the sound discretion of the court." *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 498 (D.Md. 2007) (citations and internal quotation marks omitted).  Here, it is undisputed that Axiant "assigned all rights, title, and interest" to the underlying settlement agreement to Plaintiff, as the receiver for Mann Bracken.  (ECF Nos. 2 ¶ 81; 21, at 12). There is no indication that complete relief cannot be afforded in Axiant's absence or that Axiant "claims an interest relating to the subject of the action."  Fed.R.Civ.P. 19(a).  Rather, Axiant has no remaining interest.  Further, Axiant's absence will not "impede [its] ability to protect that interest" or subject the current parties to a "substantial risk" of incurring inconsistent obligations.  *Id.*  All of Axiant's interests have been transferred to Plaintiff, and Axiant has no separate interests in this dispute beyond those represented by Plaintiff.[4] For the foregoing reasons, there is complete diversity of citizenship in the current action.

---

[4] The one case Plaintiff cites to argue that Axiant is a necessary party is, as Defendant notes, not relevant to the current case.  In the cited case, the Fourth Circuit held that a national parent company was a necessary party in an insurance action involving a local subsidiary because it had different interests.  *National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246, 250-51 (4th Cir. 2000).  Additionally, the parent company had filed a parallel state court action with the subsidiary.  *See id.* at 248.  The current case is significantly different.

(b) **Abstention**

Plaintiff also argues that this court should abstain from exercising its jurisdiction over this case and remand it to state court "in light of [the] ongoing state receivership action." (ECF No. 16, at 10). Plaintiff argues that the undersigned should abstain from hearing this case in light of the Fourth Circuit's decision in *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345 (4th Cir. 2002). In *Evans*, the Fourth Circuit upheld a district court's abstention because the case would have interfered with state receivership proceedings. *Evans*, 303 F.3d at 348. The plaintiff in that case was seeking to rescind a life insurance policy due to fraud. *Id.* at 346. The Fourth Circuit noted that allowing the action to proceed in federal court "would severely complicate the efficient dissolution of [Defendant's] estate." *Id.* at 349. Here, Defendant avers that abstention is inappropriate because Plaintiff is seeking damages and not equitable or discretionary relief. (ECF No. 21, at 12-14); *see Myles Lumber Co. v. CAN Financial Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996)). The "threshold requirement that must be satisfied for a case to be subject to remand [due to abstention] is that the complaint seek either equitable or otherwise discretionary relief." *Myles Lumber*, 233 F.3d at 823; *see also 1-77 Properties, LLC v.*

14

*Fairfield County*, 288 F.App'x 108, 110 (4th Cir. 2008) (holding "that dismissal based on abstention principles is appropriate only where the relief sought is equitable"). Here, all three of Plaintiff's counts seek legal monetary damages. Unlike in *Evans*, Plaintiff is not seeking equitable relief. Therefore, abstention is not appropriate.[5]

## III. Defendant's Motion to Dismiss

### A.   Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver,* 510 U.S. 266,

---

[5] Plaintiff also seeks reasonable fees due to Defendant's "wrongful removal." (ECF No. 16, at 11-12). This request will be denied because removal was proper.

268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal,* 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

**B. Analysis**

The central issue in this case is whether Plaintiff can recover under the policy issued by Defendant for the damages caused by Axiant. Defendant argues that: (1) Plaintiff did not make its claim within the policy period, nor was it reported, as required by the Policy; (2) Axiant's relationship with Mann Bracken fell outside the Policy, which covered solely "Collection Agency" services; and (3) coverage is barred by the Policy's Exclusion (A)(7)(B) because both Axiant and Mann Bracken were owned or controlled by the same person. (ECF No. 8, at 2-3).

As an initial matter, Defendant contends that North Carolina law applies because the policy was issued in North

Carolina.   (ECF No. 8-1, at 16 n.6).   Plaintiff "does not address choice-of-law" issues, and does not oppose Defendant's assertion that North Carolina law applies.  (ECF No. 15, at 7 n.3).   In an action based upon diversity of citizenship, the district court must apply the law of the forum state, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).   Maryland follows *lex loci contractus* and applies the law of the jurisdiction in which the contract was made.  *See, e.g.*, *Allstate Ins. Co. v. Hart*, 327 Md. 526 (1992); *Nautilus Ins. Co. v. REMAC America, Inc.*, 956 F.Supp.2d 674, 684 (D.Md. 2013).   "Maryland's appellate courts view the *locus contractus* of an insurance policy as the state in which the policy is delivered and where the premiums are paid, because such acts are the last acts necessary to make an insurance policy binding." *Nautilus Ins. Co.*, 956 F.Supp.2d at 684; *see Aetna Cas. & Sur. Co. v. Souras*, 78 Md.App. 71, 77 (1989).   Here, the Policy was issued to Axiant in North Carolina.   Additionally, although the Policy contains no choice-of-law provision, it includes a "North Carolina Amendatory Endorsement" to bring the Policy in compliance with North Carolina law.  (ECF No. 2-3, at 27-28).   Accordingly, North Carolina law governs interpretation of the Policy.

Defendant asserts that Plaintiff cannot recover under the Policy because no claim was made within the reporting period

(February 12, 2009 through August 10, 2010) and neither Plaintiff nor Mann Bracken reported the claim to Defendant within the policy period.   (ECF No. 8-1, at 18).   It is undisputed that the Policy was a "claims-made-and-reported" policy that explicitly held Defendant liable only for "any Claim first made against [Axiant] *and reported to* [Defendant] in writing during the Policy Period." (ECF No. 2-3, at 9 (emphasis added)).   Under some circumstances, written notice during the policy period, followed by a subsequent claim, will also be covered.  (*Id.* at 15).

Plaintiff's complaint alleges that "[u]pon information and belief, on or about December 21, 2009, Mann Bracken sent a letter notifying Axiant's insurer of Mann Bracken's claim for damages in excess of $6,000,000.00 due to Axiant's failure to properly provide Collection Agency Services." (ECF No. 2 ¶ 58). Mann Bracken also "filed its proof of claim for $8,874,593.00 in the Axiant bankruptcy proceeding" on January 15, 2010.  (*Id.* ¶ 69).   Plaintiff asserts that these two instances satisfy the Policy's reporting requirement.   (ECF No. 15, at 5-6). Defendant contends that Plaintiff's "claim" is the lawsuit Plaintiff initiated against Axiant on December 27, 2011, more than one year after the Policy lapsed.  (ECF Nos. 8-1, at 19; 20, at 6-7).   Defendant also argues that the proof of claim filed in January 2010 is not a valid claim because it did not

contain allegations of Axiant's alleged wrongful act. (ECF No. 20, at 8). Defendant finally argues that Plaintiff's assertion, "upon information and belief," that Mann Bracken provided notice of its claim in December 2009 is not pled sufficiently to survive a motion to dismiss. (ECF No. 8-1, at 19-22).

Regardless of whether the "claim" was first made by way of the bankruptcy filing or later in the underlying action, Plaintiff has not alleged that any written notice was provided to Defendant within the applicable period. The complaint alleges first that "Upon information and belief, during the policy period, Axiant noticed [Executive Risk] of the claim by Mann Bracken discussed in depth below." (ECF No. 2 ¶ 24). Second, in paragraph 58, the complaint alleges: "Upon information and belief, on or about December 21, 2009, Mann Bracken sent a letter notifying Axiant's insurer of Mann Bracken's claim for damages in excess of $6,000,000.00 due to Axiant's failure to properly provide Collection Agency Services." (*Id.* ¶ 58).

Defendant contends that allegations "upon information and belief" are insufficient to defeat a motion to dismiss. (ECF No. 8-1, at 19-22). Under the pleading standard the Supreme Court articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely "upon information and belief" are "insufficient to defeat a motion to dismiss." *Harman v. Unisys*

*Corp.*, 356 F.App'x 638, 640-41 (4th Cir. 2009); *see also In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756 F.3d 917, 931 (6th Cir. 2014); *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013); *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D.Md. Dec. 16, 2014). As Judge Grimm recently noted, it is important to differentiate "between a case in which pleading 'upon information and belief' is used as an inadequate substitute for providing detail as to why the element is present in an action . . . [and the] proper use of 'upon information and belief,' where a plaintiff does not have personal knowledge of the facts being asserted." *Malibu Media*, 2014 WL 7188822, at *4 (citations and internal quotation marks omitted).  Indeed, "'pleading on the basis of information and belief is generally appropriate' where information is 'particularly within defendants' knowledge and control.'" *Kajoshaj v. New York City Dept. of Educ.*, 543 F.App'x 11, 16 (2[d] Cir. 2013) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2[d] Cir. 2008)).

Here, Plaintiff's use of "upon information and belief" falls squarely within the first category Judge Grimm identified – it is an "inadequate substitute for providing detail" that should be squarely within Plaintiff's control.  *See Malibu Media*, 2014 WL 7188822, at *4.  The fact that Mann Bracken sent notice to Executive Risk is not something that would be

particularly in Defendant's control. Rather, Plaintiff, as receiver for Mann Bracken, would uniquely have access to Mann Bracken's documents and records and would be able to determine with certainty beyond "upon information and belief" that Mann Bracken provided notice. Tellingly, Plaintiff did not attach copies of the alleged notice or any proof whatsoever that notice was actually provided to Executive Risk. The complaint alleges no other facts supporting the conclusory allegations about providing notice. *See Capital Meats, Inc. v. Meat Shoppe, LLC*, No. JFM-15-212, 2015 WL 4249166, at*8 (D.Md. July 9, 2015) (denying motion to dismiss despite "upon information and belief" language, in part, because the plaintiff alleged certain other facts that were sufficient to state a plausible claim). The complaint's brief conclusory allegations, which have no factual support, are woefully inadequate to survive a motion to dismiss.

In addition, any such advance notice or report would only be effective under the policy if that written notice described "the Wrongful Act in question, the identities of the potential claimants, the consequences which have resulted or may result from the Wrongful Act, the damages which may result from the Wrongful Act and the circumstances by which [Axiant] first became aware of the Wrongful Act" in addition to requesting coverage for any subsequent claim. (ECF No. 8-3, at 14). Further, under the policy, using the advance notice procedure

requires "written notice of such claim [to be] given to [Executive Risk] as soon as practicable after it is first made." (*Id.*). There are no allegations that *any* written notice, in December 2009, or later, contained all the necessary information or promptly notified Defendant of either the bankruptcy filing or the underlying lawsuit.

Plaintiff also argues that Defendant must show prejudice from any late notice, but Defendant correctly argues that prejudice is not a requirement of a claims-made-and-reported policy under North Carolina law. Plaintiff cites only one North Carolina case supporting her argument, but it involves a different type of insurance policy with different language. *Great American Ins. Co. v. C.G. Tate Const. Co.*, 303 N.C. 387 (1981). The policy in that case did not require the claim or notice to occur during the policy period. Instead, notice merely had to be given "as soon as practicable." *Id.* at 391. Conversely, the policy here is a claims-made-and-reported policy, which unambiguously states that a claim must be made and reported within the policy period. North Carolina courts have held that "prejudice is irrelevant [when] the parties have a plain unambiguous contract setting out the terms of the agreement" as is the case here. *Eagle Engineering, Inc. v. Continental Cas. Co.*, 191 N.C.App. 593, 599 (2008). Defendant does not need to show it was prejudiced by the late notice.

Accordingly, Defendant's motion to dismiss will be granted because Plaintiff has not pled facts showing that its untimely claim and/or report is covered by the Policy.[6]

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to remand will be denied and Defendant's motion to dismiss will be granted.  A separate order will follow.

_____     /s/
DEBORAH K. CHASANOW
United States District Judge

---

[6] Because Plaintiff's claim will be dismissed due to lack of sufficient facts showing a timely claim and report, it is unnecessary to address Defendant's other arguments supporting its motion to dismiss.